22  485
67  105

22  485
76  548

## HATCH *vs.* SPOFFORD.

The defendant, in an action of account, pleaded in abatement, that, before the commencement of the action, the plaintiff and defendant then being inhabitants of the city of New York, the plaintiff brought his bill in equity, before the supreme court of that state, in which the defendant, in obedience to a *subpœna,* appeared, and submitted to the jurisdiction of said court, and filed his answer, on oath; that said bill was still pending

before a court having jurisdiction over the parties and over the subject matter, so that a judgment therein would be conclusive between the parties to said action of account, and a bar to the same, and that the defendant was served with process, while on a journey through this state ; held, that this plea was insufficient to abate the plaintiff's writ. The case of *Hart* v. *Granger,* 1 Conn. R., 154, commented on.

THIS was an action of account, brought to the superior court for New Haven county, by Ansel M. Hatch, against Paul Spofford, demanding six hundred thousand dollars damages.

The defendant pleaded in abatement, that the plaintiff's writ was issued on the 23d day of November, 1852, and was served on the defendant on said day, while the defendant was on a journey through the state of Connecticut, in the town of Wallingford, in said state, he, the said defendant, at the time, being an inhabitant of the state of New York, and not an inhabitant of the state of Connecticut ; and was no otherwise served than as a summons on said day, and was served on the defendant, at no other time, or in no other manner, or way ; that, before the beginning of said suit, and before the service of said writ on the defendant as aforesaid, to wit, on the 22d day of November, 1847, the plaintiff, then being an inhabitant and resident of the city of New York, in the state of New York, exhibited his bill in equity before the supreme court of the state of New York, in the city and county of New York, against the said defendant, he, said defendant, then being also an inhabitant and resident of the city and state of New York, for the same matters, causes, and things, and subjects of controversy, as mentioned in the plaintiff's declaration, in the present suit, and for the same matters, causes, things and subjects of controversy, for which the present suit was brought ; upon which said bill in equity, a *subpœna* was duly issued, and was duly served upon this defendant, he then being an inhabitant and resident of said city of New York ; and in obedience to which said *subpœna*, the defendant appeared before

Hatch v. Spofford.

said supreme court, to which said bill in equity was brought, and submitted himself, to the jurisdiction of the same, and, on the 29th day of March, 1848, filed his answer, duly sworn to, to the said bill in equity; as by duly exemplified copies of the files, records, and proceedings of said supreme court of the state of New York, in court to be produced, will appear; the said files, records, and proceedings, there now remaining in said supreme court of said state of New York, in the office of the clerk of said city and county of New York; and that said suit in equity, so brought before said supreme court of the state of New York, at the time of the service of the writ in the present suit, on the defendant, at the time the present suit was commenced against the defendant, was pending in said supreme court, and undisposed of, and that the parties in said former suit, in the state of New York, and in this suit, are the same and not other or different persons, and that the present suit was brought for the same matters, causes and things, as the said suit in equity before said supreme court, and for no other matter, cause or thing, and that said supreme court, in the state of New York, before which said suit in equity was pending, as aforesaid, at the time the present suit was commenced, had jurisdiction over the parties to said suit in equity, and over the subject matter of said suit; so that a judgment in said suit in equity would be conclusive between the parties in this suit, and the subject matter thereof, and bar the same.

To this plea, the plaintiff demurred, and the questions of law thereon arising were reserved for the advice of this court.

*Baldwin, R. I.* and *C. R. Ingersoll,* and *Beach,* after remarking that the defendant, having been served with process within the territory, is amenable to the jurisdiction of the courts of this state, unless they are deprived of the jurisdiction they would otherwise have had, by the pendency of the suit in

New York, contended, 1. That, irrespective of the effect of proceedings *in rem*, or of judgments rendered by courts having jurisdiction of the parties and subject matter, it is believed that, in regard to transitory actions, *in personam*, the law is perfectly well settled, as between foreign states, that a *lis pendens* in one, is no cause of abatement of a subsequent suit, against the party in another jurisdiction.

2. It does not come within the principle on which a second suit in a domestic tribunal is abated, which is, *prima facie*, regarded as vexatious. But, even within the same jurisdiction, if it be made to appear that any advantage, in point of justice or security, is attained by the second suit, it will not be abated by the pendency of the first. *Ward* v. *Curtiss*, 18 Conn. R., 290. *Quinebaug Bank* v. *Tarbox*, 20 Conn. R., 515. Gould's Pleading, 285. But, from the mere fact that a suit is pending in a foreign jurisdiction, for the same matter against the same party, afterwards found here, it does not, *prima facie*, appear to the court, that the second suit is vexatious. As the courts do not take judicial notice of the laws of foreign states, they can not know that the defendant may not have an available defence to the *remedy* in the foreign state, of which, by the policy of the state where the second suit is brought, he would not be allowed to avail himself.

3. Whatever may be the effect of judgments rendered, in regard to their conclusiveness, when sought to be enforced in foreign states, it is certain that, until final judgment has been rendered, the original cause of action remains unchanged, and, though the weight of authority seems to be in favor of the conclusiveness of such judgments, it has been uniformly held, that the *pendency*, merely, of a suit in one jurisdiction, is no cause of abatement of a suit, subsequently brought in another. *Maule* v. *Murry*, 7 Term R., 470. *Imlay* v. *Ellefsen*, 2 East, 463. *Bailey* v. *Edwards*, 3 Swanst., 703. *Bank* v. *Nias*, 4 Law Eq., 252.

4. The defendant relies on the fourth article of the con-

stitution of the United States. It has been decided, under this clause, and the act of Congress, of May 26th, 1790, that " if a judgment has the effect of record evidence in the courts of the state from which it is taken, it has the same effect in the courts of every other state. Consequently, that *nil debet* is not a proper plea. *Mills* v. *Duryee,* 7 Cranch, 481. But it does not thereby acquire the force of a domestic judgment in another state. It establishes, by record evidence, the debt conclusively. But it is no less a foreign judgment than it would have been, if there had been no such provision in the constitution. *McElmoyle* v. *Cohen,* 13 Peters, 312. The statute of limitation may be pleaded, in bar of a suit brought on it in another state, though such statute was not applicable to domestic judgments, and though no such statute existed in the state where such judgment was rendered. It simply establishes the debt, but furnishes no means of enforcing it, by execution in any other state, or otherwise than by another suit upon the judgment.

5. A pending suit has no effect whatever upon the cause of action, in another jurisdiction. Until the court has acted upon it, the transcript of the proceedings will prove in another state, only, that such proceedings are pending. But when those proceedings merely show that a cause of action, transitory in its nature, is in litigation between the parties, they show a fact, which has all the faith and credit given to it, to which it is entitled in another jurisdiction, when its existence, as a fact, is recognized. Nothing is shown which affects the cause of action, or which presumptively renders a second suit in another state where the defendant is found, vexatious or unnecessary. The same considerations which are applicable to a second suit, in a jurisdiction wholly foreign, are equally applicable here. The process of the court before which the first suit was brought, will not reach the defendant, or his property, in his new location. The defendant, by his answer on oath to the bill in chancery, pend-

ing in New York, may have an advantage which it may not be in the power of the plaintiff to countervail, by disinterested testimony ; whereas, in the suit in Connecticut, the parties, by the policy of our law, will stand upon an equal footing.   The defendant has not stated, in his plea, the character of the defence, set up in answer to the bill in equity.   Suppose it to be the statute of limitations.   A judgment even, upon that plea, would only be evidence of the fact, that the remedy was barred in that state.

6.  That the decisions in the state of New York, in regard to the effect of a *lis pendens* in another state, are conformable to the English rule.   *Bowne* v. *Joy,* 9 Johns., 221.   *Walsh* v. *Durkin,* 12 Johns., 100.   *Mitchell* v. *Bunch,* 2 Paige, 606.   *Godfrey* v̇. *Hall,* 4 Miller, Lou. R., 158.   2 Kent Com., 124.

If the exercise of jurisdiction, where it exists, were not demandable of right ; if, in such case, it could ever be regarded as discretionary on the part of the court, there can be no claim, in view of the decisions in the state of New York, that the courts in this state are bound, by any rule of comity to the judicial tribunals of New York, who do not themselves recognize any such obligation, to forbear the exercise of jurisdiction.

7.  That the case of *Hart* v. *Granger,* 1 Conn. R., 154, was decided, before the decision of the supreme court of the United States, in 2 Peters., 586, (since generally followed in this state and elsewhere,) that the states of this union are to be regarded as foreign to each other, except so far as they are united, by the constitution, for national purposes.

The property to be affected by the decision in that case, was land situated in Ohio, and the proceeding on the bill in equity, pending in that state, seems to have been regarded as a proceeding *in rem.*   And it is believed that it has not been regarded by the court, or by the profession generally, as establishing the doctrine claimed by the defendant in this case.

8.  That the plea in abatement to an action at law, on the

ground of the pendency of a bill in equity, for the same matter, between the same parties, in another court, it is believed, has never been sustained in any court, foreign or domestic. *Blanchard* v. *Stone*, 16 Vermont, 234.

9. That the plea refers to the plaintiff's declaration, and avers that the bill in equity, which was filed November 22d, 1847, was for the same matters, causes, things, and subjects of controversy, as mentioned in the plaintiff's declaration, in the present suit. But the declaration thus referred to, charges the defendant, as bailiff, &c., and demands an account from the 22d of March, 1819, until the first of November, 1852, including a period of five years, after the filing of the bill in equity.

*C. A. Ingersoll*, contra, contended, 1. That if a suit is pending before any court, and while it is thus pending, another suit is brought, by the same plaintiff, against the same defendant, for the same matter, cause and thing, and if a judgment, rendered in such former suit would be considered by the court before which the latter suit is brought, as conclusive between the parties, and binding upon them, so that such judgment could be pleaded in *bar* to the latter suit, then the pendency of such former suit could be pleaded in abatement of the latter one. *Hart* v. *Granger*, 1 Conn. R., 171. *Newell* v. *Newton*, 10 Pick., 471. 3 Watts & Serg., 399. 2 Doug., 244. *Mills* v. *Duryee*, 7 Cranch, 481.

That a judgment, rendered by the supreme court of the state of New York, would be considered by our courts, as *merging* the original cause of action ; that it would be a *bar* to a suit brought in this state, for the same matter, cause and thing ; that it would be conclusive between the parties, and binding upon them, so that such judgment would estop them from further litigating the matter in controversy ; that it would have as full effect, as a judgment rendered by the courts in this state. *Hampton* v. *M'Connell*, 3 Wheat., 234.

*Andrews* v. *Montgomery*, 19 Johns., 160. *Hall* v. *Williams*, 6 Pick., 232. Then it follows, that the plea in abatement is sufficient, and that the present suit must abate and be dismissed.

2. That there could be no doubt, in the mind of any one, were it not for certain decisions in the state of New York, in which it has been held, that the pendency of a prior suit, in the courts of another state, would not abate a subsequent suit, for the same matter, cause and thing, brought before the courts in that state. *Bowne* v. *Joy*, 9 Johns., 222. *Walsh* v. *Durkin*, 12 Johns., 99.

But the supreme court of the United States, in the seventh of Cranch, and in the case in the third Wheaton, already cited, have determined, that the premises upon which those decisions were based, were false. Even in the state of New York, it has been decided, that a foreign attachment, or trustee process, pending in another state, might be pleaded in abatement of a suit, subsequently brought in that state. *Embree* v. *Hanna*, 5 Johns., 101. *Forest* v. *Leavitt*, 1 Hall, 137. But this point has been expressly decided, in our own state. *Hart* v. *Granger*, 1 Conn. R., 154. In the case of *Newell* v. *Newton*, 10 Pick., 470, Shaw, C. J., in giving the opinion of the court, intimates that if, in the plea in abatement, it had been alleged, that the court in the state where the prior suit was pending, had jurisdiction of the parties, and of the subject matter of the suit, the plea would have been sufficient to abate the second suit. *Ex parte, Balch*, 3 McLean, 221. *Renner, &c.*, v. *Marshall*, 1 Wheat., 215. 3 U. S. Cond. R., 547. *Gelston* v. *Hoyt*, 3 Wheat., 246, 4 U. S. Cond. R., 244. 2 Kent's Com., 125, note. 3 Watts & Sergt., 399. 2 Doug., 244. The effect of the judicial proceedings in the state of New York, the *faith* and *credit* given to them in that state, would be to abate this suit, if it was pending there ; and they must then have the same effect here. The judicial proceedings of another state are to have the same *faith* and *credit* given them in this state, as if they had taken place in this state. If the pro-

ceedings had in New York, had been had in this state, then, undoubtedly, they would abate this suit.

3. The proceedings and judgments of the courts of the state of New York, are not foreign proceedings and judgments. If they were foreign judgments, then an action of debt on judgment would not lie in this state, upon them. 1 Chitty's Pleading, 120. 11 East, 124. Douglass, 4. But, debt on a judgment of a court in the state of New York, is the proper action, to recover the amount of that judgment, before a court in this state. Our courts would consider it, when regular, as merging the original cause of action ; and, as a *bar* to a suit for the original cause of action, brought in this state ; *nul tiel record* would be the proper plea to it, and it would be binding and conclusive upon the parties here. *Hall* v. *Williams*, 6 Pick., 232. 7 Cranch, 481. 3 Wheat., 234. The state of New York is not a foreign state. The citizens thereof, and the citizens of this state, are citizens of the same state, and that state is the United States. It is a restricted, independent state, but not a foreign state. Courts in this state, have never considered another state as a foreign state. The courts of Westminster Hall consider as foreign judgments, all to which they do not give full faith and credit, and which are rendered by courts, which have not concurrent jurisdiction with them ; as a Scotch judgment,—an Irish judgment,—a Canada judgment. The plea involves a matter of fact, which can not always be determined by the record.

ELLSWORTH, J. The defendant's plea in abatement states, that the plaintiff and defendant are inhabitants of the city of New York,—that the plaintiff has there instituted and is prosecuting a suit against the defendant, in a court of chancery, for the same matter, cause, and thing,—that the defendant has there appeared, filed his answer, and submitted to the jurisdiction of the court,—that the court has full jurisdiction to adjudge the matter, and its judgment will be

a conclusive bar to the controversy. To this plea, the defendant has filed a demurrer, and thereby admits the truth of the allegations, at least for the purpose of trying the demurrer.

The pendency of a prior suit of the same character, between the same parties, brought to obtain the same end or object, is, at the common law, good cause of abatement. It is so, because there can not be any reason or *necessity* for bringing the second; and, therefore, it must be oppressive and vexatious. But while the law is thus careful to screen the defendant from oppression and vexation, it is equally impartial and open to the plaintiff, and I may say, even indulgent, in permitting him, a creditor, to seek redress, by pursuing several remedies at the same time, if this is found to be reasonable and necessary. It will not countenance vexation and oppression, neither will it prevent a creditor from using, in a fair manner, the means in his power to collect his debts.

Now, the plea of a prior suit is to be looked at, in just this impartial view. The rule above stated is not a rule of unbending rigor, nor of universal application, nor a principle of absolute law,—it is rather a rule of justice and equity, generally applicable, and always, where the two suits are virtually alike, and in the same jurisdiction. It should be remembered, that a dilatory plea is not like a plea of payment, or satisfaction, or of something in bar of the merits of the claim; then it would find more favor; but its object is to cause postponement and delay,—and the language of the plea is, the proceeding is unnecessary and vexatious, and should be abated.

It is obvious then, a second suit is not, of course, to be abated and dismissed as vexatious, but all the attending circumstances are to be first carefully considered, and the true question will be, what is the aim of the plaintiff? Is it fair and just, or is it oppressive? It is possible the defendant may not owe the debt, as the plaintiff claims he does, and

may want only to present his defence, in a manner as little expensive and inconvenient as possible,—which right he ought certainly to enjoy ; but his plea *now* is, for delay, and delay only.   If the plaintiff, by a second suit, can place his claim in a more favorable condition for obtaining redress, why should he not be permitted to do it ? as where he can secure his debt by an attachment, his first suit being a summons,—or where, as in *Ward* against *Curtiss*, the first suit is found to be premature ; so where he is apprehensive that, by reason of error or misapprehension, he is not in as good a condition as he could place himself in, by a second suit.   What reason can be assigned, why he may not pursue his best remedy ?

The court will not be reluctant to grant him any necessary aid ; nor is a defaulting debtor a favorite of the court, to be shielded from a fair and speedy trial, in any competent court, where the debtor can be summoned to appear.

The only certain rule on this subject, which we find, is, where the parties are the same and the second suit is for the same matter, cause and thing, or the same object is to be attained, as in the first suit and in the same jurisdiction, the second shall abate and be dismissed ; and no case beyond this, can be found, except perhaps *Hart* v. *Granger*, 1 Conn. R., 154, which extends the rule to suits pending in different and independent jurisdictions,—nor to cases pending in the same jurisdiction, in a court of law and in a court of equity. These last qualifications are, in our judgment, most material to the case on trial, and are, we think, decisive of the merits of the plea in abatement.   No case has been cited by defendant's counsel, (and his elaborate researches would have found them, if in the books,) of a bill in equity, pleaded in abatement to an action at law, or *vice versa*, even though the general object of both suits be, the attainment of the same object ; which is allowing to this defendant, quite as much as the facts in his plea will justify ; for the bill in equity is by one partner against the other, not only to settle his account but to close up the partnership, while the action

at law is on a covenant to render his account. In *Laflin* v. *Brown*, 7 Met., 676, the court say, " The pendency of a bill in equity has not usually been considered sufficient ground for sustaining a plea in abatement ; but when both suits are commenced by the same party, it may furnish a proper occasion for a motion to require the party to elect in which action he will first proceed ;" so in *Blanchard* v. *Stone*, 16 Vermont R., 234, it is said by the court, " A plea in abatement to an action at law, on the ground of a pendency of a bill in equity for the same matter, between the same parties, in another court, it is believed, has never been sustained in any court, foreign or domestic." There is very much in the peculiar nature and extent of the jurisdiction of these different courts, to sustain this exception to the general rule. Besides, the rules of procedure and manner of execution in these courts, are not alike ; so a court of equity acts or not, in many cases, according to its discretion ; it not unfrequently leaves the party to his remedy at law ; it prescribes conditions, causes new parties to be brought before the court, and combines new matter, in any stage of the trial, by supplemental, or by cross bills, and often protracts a case, otherwise easily disposed of, for a long period of time,—equity acts likewise, without a jury, and in most countries, upon evidence taken in writing, by masters in chancery, and it has a wide discretion, which it is generally found necessary to call into exercise, in winding up a partnership connection. It is true, the demurrer in this case admits, that this action at law will be settled by the judgment in the suit in New York ; but this is, as before said, an admission, to try the demurrer,—the general question remains as before.

But, if we are mistaken in this limitation of the general rule, there is another which is not less obvious and decisive, *viz.*, the suits must be pending in the same jurisdiction. This has long been the law in England, as established in the cases of *Maule and another* v. *Murray and another*, 7 Term R., 466, and *Imlay* v. *Ellefsen*, 2 East, 457, and *Ostell*

v. *Lepage*, 10 Eng. L. & Eq., 255.    In the first, the court
adopt this language, " This court will not take judicial no-
tice of an arrest in a foreign country ;" adding, " it would
be unjust to deprive the plaintiffs of perhaps the only secu-
rity they have, for the payment of their debt ;" and, in the
second, Lord Ellenborough, Ch. J., in giving the opinion of
the court, which turned on this very point, says, " We do
not see but the plaintiff has the same security, (by a suit in
Norway,) for his demand, and all the benefit of prosecuting
his suit there, which he has here ; and as we do not see that
such is the case, we do not feel ourselves warranted in ta-
king from him, the benefit he is entitled to, from the laws of
this country.    So in *Bayley* v. *Edwards*, 3 Swanston, 710,
which was a suit in Jamaica, a plea in abatement was filed,
setting forth a prior suit then pending in England ; the court
in England, on appeal from the colonial court, held, the plea
was insufficient.    Lord Camden said, " It is impossible to
maintain this plea,—it is a plea to the jurisdiction.    The
plaintiffs in England, attempt to set up the suit here, in bar
of the jurisdiction of Jamaica ; but the causes for allowing
the plea of double suits, are all where the suits are in court
here, while this is a second suit, in a court which is a foreign
court."    The same is the law in the United States.    It was
so held in 11 N. H., 88.    *Bowne & Seymour* v. *Joy*, 9
Johns., 221.    *Walsh* v. *Durkin*, 12 Johns., 101.    *Mitchell* v.
*Bunch*, 2 Paige, 620.    *Newell* v. *Newton*, 10 Pick., 472,
and *Colt* v. *Partridge*, 7 Met., 574.    If the case of *Hart et
al* v. *Granger* is held to contain different views, and can not
be distinguished from the above cases, by reason of its pe-
culiar circumstances, the land lying in Ohio, or as proceed-
ing upon the idea that these states are not foreign states,
which was not decided until afterwards, in the supreme
court of the United States, *Buckner & Finley* v. *Van Lear*,
2 Pet., 586, we can not approve of it.    If there were noth-
ing else in the case, but the fact, that the plaintiffs (citizens
of Connecticut) were defendants in the suit in Ohio, and, of

necessity, subject to a withdrawal of that suit, by the plaintiff, this was enough to justify the plaintiffs in getting the contract at once cancelled, if they could, as they found the plaintiff within our jurisdiction. It can not be supposed that they were under the necessity of going to Ohio, in order to obtain redress, when the plaintiff could, at his pleasure, leave the present plaintiffs remediless, by suffering a non-suit. It is quite possible, if these plaintiffs had then filed a cross-bill, they could then have secured the relief which they were seeking, and to which they were entitled, upon their hypothesis ; but they were not obliged to submit to such proceedings, and it might not have been expedient for them to trust their case to the decision, and a final one perhaps, of a county court of Ohio ; for they had tried in vain to remove the case into the United States court.

The counsel for the defendant insists, that, although these states are foreign states, except for federal purposes, the constitution of the United States has provided, that full faith and credit shall be given, in each state, to the public acts, records and judicial proceedings of every other state, and that this provision in the constitution makes these states domestic states, or, at least, that their judicial proceedings are to be held as if they were ; because they are conclusive and final ; and then, he insists, that the general principle, already commented upon, shall be applied. We think it is not so, although we fully assent to the conclusiveness of the proceedings specified in the constitution ; but the want of this conclusiveness is not the reason assigned, why a prior suit, in a foreign jurisdiction, shall not abate another. It is not so said in *Maul et al.* v. *Murray et al.*, or *Imlay* v. *Ellesfen*, or *Bailey* v. *Edwards*, nor in the cases in this country ; although some of the latter were decided after the decision in *Buckner & Finley* v. *Van Lear*. And although the earliest case in New York, was prior to *Buckner & Finley* v. *Van Lear*, yet we think the same view of our national compact had prevailed from the first. Judge Van Ness, it is true, in *Mil-*

*ler* v. *Hackley*, 5 Johns., 375, did hold, that a bill drawn on a person in another state, was not a foreign bill, but it does not appear, this was the point of the case, or that the question was argued or examined. Excepting this remark, we think, the decision in *Buckner & Finley* v. *Van Lear*, involved nothing essentially new. Such are the cases of *Warder* v. *Arrel*, 2 Wash., 298, *Hitchcock* v. *Aiken*, 1 Cai., 460, *Bartlett* v. *Knight*, 1 Mass , 430, and cases in note ; *Duncan* v. *Course*, 1 South Carolina Constitutional R., 100, 3 Kent, 93. The true reason is, every country or state is entirely sovereign and unrestricted in its powers, whether legislative, judicial, or executive, and hence, does not acknowledge the right of any other nation, to hinder its own sovereign acts and proceedings. Nor will the courts of one country take notice of the courts of another, nor of its laws, or rules for the administration of justice ; and therefore, the courts of a country, where a second suit is brought, will not dismiss a suitor, merely because initiatory steps have been taken elsewhere. It may be cause for staying proceedings : but, to abate a suit is to put a final end to its existence ; should it do this, it might learn, too late, that no adequate remedy can be had elsewhere. That country is undutiful and unfaithful to its citizens, which sends them out of its jurisdiction, to seek justice elsewhere. We need not repeat, that, from necessity, it does not know what is practicable in a foreign jurisdiction,—what the mode of trial there,—the rules of evidence,—the statutes of limitation, or what the kind of judgment and satisfaction, and whether, if satisfaction is to be had at all, it may not be, on terms prescribed by laws favoring chiefly the interests of the debtor. This is so, even in some of these states ; how much more may it be so in other states and countries. Besides, the expense, uncertainty and delay, incident to a trial abroad, perhaps in a country very remote, is, one would think, cause enough for prosecuting a suit at home. The creditor, having

been obliged to sue the debtor abroad, because he was found there, and could be sued nowhere else, should not be denied the right to sue his debtor at home.   In truth, to do this, in such a case, is not unnecessary and vexatious ; for it is what the most upright and scrupulous man would do, without hesitation.

As we have said, the defendant's counsel endeavors to distinguish this case, from those cited from the English reports, in this,—that the judgment in New York will be final and conclusive ; which, he says, is not the case with the foreign judgment ; and this is the point he has most labored ; for, he does not deny, that the English law is against his defence, if it is to apply.   Now, we remark, it is by no means clear, whether a judgment fairly obtained in the court of a foreign country, (the court having jurisdiction of the subject matter and the parties,) is not conclusive elsewhere. This is a disputed point.   If then, it is conclusive, the entire force of the argument is taken away.   It is undoubtedly so, in all proceedings *in rem*, and there is very high authority that it is so, in actions *in personam*.   Mr. Greenleaf, in his treatise on Evidence, 1 vol. sec. 546, closes his remarks on the cases, by saying, " Though there remains no inconsiderable diversity of opinion among the learned judges of the different tribunals, yet the present inclination of the English courts seems to be, to sustain the conclusiveness of foreign judgment ;" and Judge Story says, in his Conflict of Laws, sec. 545, 550, 605.   " It is indeed very difficult to perceive what could be done, if a different doctrine were maintainable to the full extent of opening all the evidence, and merits of the cause anew."   Is the court to review the former decision, like a court of appeal, upon the old evidence ; or is the court to open the judgment, and proceed as at first, *ex equo et bono?*   The rule, that the judgment is to be *prima facie* evidence for the plaintiff, would be a mere delusion, if the defendant might still question it, by opening all or any of the original merits, on his side, for it would be equivalent

Hatch *v.* Spofford.

to granting a new trial. The very latest case we have seen, is the *Bank of Australia* v. *Nias*, in Queen's Bench, 4 Eng. L. & Eq., 252, where the court most evidently inclined to hold a foreign judgment to be conclusive, if the court had jurisdiction, and the trial was fairly conducted; but they held it unnecessary to decide the point absolutely, because the judgment which had been rendered in Australia, a colony, had been appealed from, to the Queen's privy council. Lord Denman, in *Furguson* v. *Mahon*, 39 E. C. L. R., 39, and more emphatically in *Henderson* v. *Henderson*, 6 Queen's Bench, 288, says, "That a plea to an action on the judgment of a colonial court, ought to steer clear of any inquiry into the merits of the case ; for whatever constituted a defence, in that court, ought to have been pleaded there."

There are, undoubtedly, many *dicta*, that a foreign judgment may be overhauled, on its merits, and is only *prima facie* evidence of the debt. It does not appear, however, says Lord Campbell, Ch. J., that the question has ever been solemnly decided, where the foreign court has regularly adjudicated the matter between the parties. It is open, no doubt, to the defendant, to show, the foreign court had not jurisdiction of the subject matter, or the person, or that the defendants had not a fair trial. Perhaps it is in view of these exceptions, it has been said that such a judgment is only *prima facie* evidence, and may be impeached. We will not, however, pursue the subject any further ; the numerous authorities on the subject are collected and ably commented on, by Judge Story, in his "Conflict of Laws," and by Smith, in his Leading Cases, 2 vol., 499. Most of them are likewise collected in Greenleaf's Evidence, and in Cowen's Notes to Philipps. For these reasons, we advise judgment to be rendered for the plaintiff.

In this opinion, the other judges concurred.

Judgment to be rendered for the plaintiff.