## PRIDE v. STATE.

1. COUNTY WARRANTS: *Jurisdiction to cancel or reissue.*

   On appeal from the judgment of a County Court rejecting warrants of the county presented for re-issuance, the Circuit Court can render only such judgment as the County Court should have rendered. It may examine witnesses and ascertain from the evidence whether the warrants are just and legal demands; but it can exercise no equity power, such as directing a reference to a master to state an account between the holder of the warrants and the county, on the claim by the latter of an equitable set-off.

2. EQUITY: *Stating accounts: Declaring trusts: Set-offs, etc.*

   Under an order made in 1887, calling in the outstanding warrants of a county, the defendant presented for re-issuance, warrants amounting to the sum of $65,000, which the County Court rejected, and he appealed from its judgment. At a subsequent term during the same year, the court rendered judgment against the defendant for the sum of $118,000, found to be due from him to the county for moneys received by him as Collector of revenue, in 1864. He also appealed from the latter judgment, and while both appeals were pending, the State, for the use of the county, filed a complaint in equity against him, alleging that he received the warrants as part of the revenue of the county, for the year 1864, and converted them to his own use; that he was insolvent and his bond as Collector had been lost; and praying that he be restrained from collecting the warrants, or, if he was entitled to have them re-issued, that an equal amount of his indebtedness to the county be set off against them. HELD: (1.) That whether the warrants were part of the county revenue or

legally belonged to the defendant and he was found to be indebted to the county, in either case a court of equity only could afford the plaintiff proper relief. (2.) That the equitable action to obtain such relief is not barred by the pendency of the causes originating in the County Court, since, although they relate to the same matters set out in the complaint in equity, they seek a different object. (Following *Garibaldi v. Wright, ante, 416.*)

2. SAME: *Staleness of demand.*

On the facts alleged in such complaint, the defendant cannot resist the relief it seeks, on the ground that the demand of the county is stale.

3. STATUTE OF LIMITATIONS: *In actions against Collectors.*

The statute of limitations will not begin to run in favor of a County Collector who converts to his own use the public revenues, until the amount due from him is ascertained by settlement of his accounts.

APPEAL from *Sevier* Circuit Court in Chancery.

R. D. HEARN, Judge.

This is a suit in equity, brought by the State for the use of Sevier County, against Henry C. Pride. It appears from the allegations of the bill that Pride was Collector of revenue for Sevier County, in 1864; that he collected the revenue of that year and failed to pay it over to the Treasurer, or to make any settlement with the County Court, but fraudulently converted the same to his own use; that the County Court, at the July term, 1861, made an order appointing commissioners in each township to relieve the families of volunteers in the Confederate and State armies, and that taxes were assessed and collected for that purpose; that in October, 1861, an order was made that all allowances made for the relief of such families, should be drawn by the Clerk of the Court on the Treasurer; that at the same term of the court, on November 1, 1861, it was ordered that all the appropriations before that time made, and for which taxes had been assessed, including allowances for the support of the families of volunteers in the army, be collected and paid into the county treasury as ordinary county revenue, and that the several appropriations and allowances should be consolidated; that it was further ordered that all orders made at that term of the court directing the Clerk to draw his

warrants on the Treasurer out of any particular fund, be set aside, and that he draw all his warrants on the Treasurer for all allowances made by the court, in the ordinary manner of drawing county warrants ; that these orders were in full force in 1864 and 1865, including the assessment and collection of taxes to pay the orders of the court, in allowing claims against the county; that at the April term, 1864, of the court, it was ascertained that to pay the current expenses of the county for that year a tax of $8000 should be levied, to pay for the support and relief of the families of soldiers in the army, a tax of $82,000 should also be levied, and for these purposes 3 per cent. on all the taxable property in the county was assessed, extended upon the tax-books and collected as a whole that is to say, that the taxes for both purposes were consolidated and made one, all allowances for the relief of the families of soldiers in the army, and all allowances for ordinary expenses, being made and entered of record on the same day, and frequently in the same order; that the Clerk drew all warrants for the payment of such allowances on the Treasurer, to be paid out of the taxes consolidated and collected as stated, and that all the orders of the court allowing claims against the county for the ordinary expenses were so mixed with the allowances made for and in aid of the war, and the warrants were so drawn that they are all alike illegal and void, though the warrants have on their face a money value ; that in the latter part of 1863, and all of 1864, all the able-bodied men of Sevier County, between 18 and 50 years of age were in the regular service in the army, and their families were almost wholly dependent upon the relief given them under the orders of the County Court ; that large amounts of county warrants were issued at every term of the court during the period of the war, for such purpose, by means of which large amounts of warrants were in the hands of the tax-payers of the county at the time of the collection of the taxes of 1864, and were collected and received by the Collector of the county, and by

him retained and converted to his own use, and he is now attempting to collect the face value of such warrants from the county as the *bona fide* owner thereof; that the bond of Pride as Collector is lost, and that he is wholly insolvent; that on April 6, 1887, the County Court of Sevier County made an order calling in her outstanding warrants for examination, cancellation and reissuance; that in obedience to this order Pride, on July 25, 1887, appeared in court, and presented for examination and reissuance 501 warrants, amounting in the aggregate to $65,071.33, which, on examination, were rejected, and Pride appealed to the Circuit Court, where the matter is now pending and undetermined; that in April, 1887, the County Court made an order reciting that Pride had colleeted the taxes of the county for the year 1864, and requiring him to make a settlements thereof; that Pride appeared at the January term next following and filed an answer, to which a demurrer was sustained, and refusing to plead further, judgment was rendered against him for $118,237.39 county taxes, and $450 ferry license, from which he appealed to the Circuit Court, where the appeal is now pending and undetermined; that the warrants presented by Pride for examination and reissuance are regular on their face, and can only be defeated by extrinsic evidence that the county is not legally bound to pay them. The prayer of the bill is for general and special relief, and is substantially as follows: The plaintiff asks the court, by proper orders, judgments and decrees, to grant to her such relief in the premises as to equity and good conscience may pertain, and that she may have all the benefit and advantage of all equitable set-off and limitation on the hearing of the cause; that the defendant on the final hearing be perpetually restrained from the collection of the warrants presented by him for reissuance; that in the event such warrants should be found to be a part of the revenues collected by the defendant in 1864, that they be canceled, and that if the defendant shall recover any part of the warrants, that the plaintiff have her

equitable set-off as may be proven ; and that if, upon the hear-ing, it should appear that by the orders of the County Court, mixing and collecting the revenues in aid of the war with other revenues, the whole system of revenue during the war was void, that the plaintiff may recover all her costs, and such other relief as to equity may pertain, the plaintiff in no case asking to recover of the defendant the revenues of the year 1864, more than a sufficient amount to set-off and defeat the claim of defendant. The defendant demurred to the com-plaint on the ground (1), that it states no cause of action, and (2), that the court had no jurisdiction of the matters which it. sets forth. The demurrer was overruled and the defendant refusing to plead further, the court rendered a final decree on the merits, finding that the defendant had collected warrants. of the county in payment of the taxes of 1864, amounting in the aggregate to $118,237.39, which he never accounted for to the county, but converted to his own use ; that the 501 war-rants, presented by the defendant to be reissued, aggregating the sum of $65.173.33, were, each and all of them, part and parcel of the warrants collected by him and converted as aforesaid ; and decreed their cancellation, and enjoined him. from ever prosecuting any action thereon. He appealed.

*G. W. Williams* for appellant.

1. Equity follows the law in the application of the statute of limitations. *Wood on Lim., sec. 58 et seq.; 16 Ark., 129; 19 id., 16; 46 id., 25; 47 id., 301.* Laches and neglect are always discountenanced in equity. *95 U. S., 157; 1 Dan. Ch. Pl. & Pr., \* p. 561.* The appellee was barred. *Mansf. Dig., secs. 4481-5832-3, 5839, 5844, 5847.* Twenty-three years had. elapsed since appellant's alleged liability had accrued.

2. There was no ground for equity jurisdiction on account. of set-off. The County Court had the authority under *Mansf. Dig., secs. 1147-8, 1153,* to call in and cancel the warrants, and

this would have disposed of the whole matter.    The remedy at law was adequate.   *15 Wall., 373– 13 id., 618.*

3.   The plea of set-off was inconsistent with the allegations of the bill.

Appellee had elected to proceed at law, and had two judgments *in her favor*, and cannot now call in the aid of equity to assist her in disposing of them, thus ousting the jurisdiction of the law courts.   *6 Ark., 368; 1 id., 186; 6 id., 85; 5 id., 501; 14 id., 32; 22 id., 277; 26 id., 63; 43 id., 107; 35 id., 109; 14 id., 360; 9 Wheat., 532.*

She does not allege that she was deprived of any defense by surprise, accident, mistake or fraud, etc., or that she was. ignorant of important facts material to her defense on the trial at law, etc.   Chancery has no power to correct judgments of the Probate Court.   *14 Ark., 71; 39 id., 172; 46 id., 260; 37 id., 650; 39 id., 485.*   A defendant must make all his defenses legal and equitable at law ; if he does not, equity cannot be invoked.   *46 Ark., 272; Mansf. Dig. sec. 4932.*

Under section 5173 of Mansfield's Digest, one judgment. might be set-off against another in the law court, and chancery should not interfere.   *49 Ark., 136.*

The facts alleged constituted a good defense at law, and: the demurrer should have been sustained.   *15 Wall., 373,* a case similar to this.   *13 Wall., 616.*

The claim is stale.   *37 Ark., 110; 39 id., 139; 48 id., 238.*

*Compton & Compton* for appellee.

1.   On the facts stated in the bill, one of the acknowledged grounds of equitable jurisdiction is manifest—a complicated account between the parties, they having mutual demands against the other.   *8 Ark., 57; 31 id., 345; 48 id., 426; 58 Miss., 835; 30 id., 218; 5 Humph., 242; 1 Sch. & Lef., 309; Bisph. Eq., sec. 484; Story Eq., Jur., secs. 451, 452, 457; 2 Am. Dec., 291.*

2.   The *fraudulent* conversion of the warrants to his own.

use, and his insolvency is another ground of equitable juris-diction.

The judgments could not be set off at law, for the judg-ments to be set off must be " for the recovery of money." *Sec. 5173 Mansf. Dig.* But *sec. 5174* provides that judgments that could be set-off may be enjoined.

Taking all the fact together, three distinct grounds of equitable cognizance appear : 1. Complicated account. 2. Fraud. 3. Equitable set-off.

The prayer is for general as well as special relief. *Story Eq. Pl., sec. 40.*

There is no statute of limitations which runs against the county because of neglect or failure of the County Court to perform its duties. Section 4481 applies only to actions, brought pursuant to section 5873. See *secs. 5832-3-9, 5844, 5847, 5850, Mansf. Dig.,* and not to cases where there has been an omission of duty on the part of the County Court, and no action ever brought against the delinquents.

It is the claim of Pride that is stale, and is thoroughly tainted with fraud. See authorities cited by counsel for ap-pellant.

HEMINGWAY, J. Upon appeal from the County Court the Circuit Court acquires only such jurisdiction as the County Court had, and may render such judgment only as the County Court should have rendered.

COUNTY WAR-RANTS: Cancel-ding, etc. In the matter of the presentment of county warrants by the appellant for reissuance, it was authorized to examine them and to reject such as in its judgment the county was not justly and legally bound to pay, and reissue those not rejected. *Mansf. Dig., sec. 1152.* In ascertaining what warrants the county was justly and legally bound to pay, it might summon and examine witnesses, but it had no equity powers and could not direct any reference to a master to take proof, examine records and documents, and state an account. If, upon its ex-

Pride v. State.

amination, it found the warrants, or any of them, just and legal demands, it could only reissue them, and it could not decline to do so, although it might believe that upon the determination of a claim by the county against the person presenting them, he would be found indebted to it in a large sum. In this case, although the claim of the county had been established and the amount due it ascertained, it is doubtful if the court would be authorized to cancel the warrants legally due and refuse to reissue them. An appeal had been taken from the judgment fixing the appellant's liability, and it was entirely possible that it would not be determined until after the other cause, in which event if the court found that any of the warrants were just and legal debts, they might be reissued and disposed of before his liability was fixed.

In the proceedings of the County Court to procure a settlement of the appellant's account, the court was authorized duly to adjust his account, ascertain the amount due by him, and to render a judgment against him in case he failed, at the next term of the court to show cause to set aside the settlement. *Mans. Dig., secs. 5844–47.*

By the settlement appealed from, he was found to be indebted to the county in the sum of $118,000. But he was insolvent and his bond lost; if any warrants should be delivered to him they could be easily placed beyond the reach of legal process. Equity is invoked to prevent this.

But it is alleged and the demurrer admits, that the warrants were received by appellant as a part of the revenue of the county, and by him retained and converted. If so, he held them for the county; he was a naked trustee, and the county the real owner. A court of equity only has the power to declare the trust, and compel the delivery of the trust property to the real owner. Even if a court of law could determine all the rights of the parties, its process could not enforce them. But a court of equity in one cause, could adjudge the rights of the parties as to all the matters involved in the pend-

EQUITY:
Trusts:
Set offs, etc.

-ing controversies, as well as to those not involved in either of them, so as to do full and complete justice between them. In either case, whether the warrants were a part of the revenue converted by the appellant, or he was found indebted to the county upon a settlement of his account and the warrants legally belonged to him, a court of equity could, but the County Court could not, afford the proper relief. The causes pending were about the same matter set out in the complaint in this cause, but they did not seek the same object. This case, therefore, comes within the rule announced by this court in the case of *Garibaldi v. Wright*, decided during the present term. The courts do not favor a multiplicity of suits, between the same parties, about the same matter, seeking the same object, and when one is pending in a court of competent jurisdiction, they have declined to entertain another such because it would be unreasonable and unnecessary, and therefore vexatious and oppressive. We do not so regard this suit, but it seems to us reasonable and necessary, and we think the complaint discloses a proper case for equitable cognizance. *Hatch v. Spofford, 22 Conn., 485.*

The case of *Grand Chute v. Winegar, 15 Wal., 373*, relied upon by counsel for appellant to sustain the contrary, was not like this. There an action had been brought on certain claims which the defendant alleged were invalid. Their validity was the only matter in controversy between the parties, and the court held that as this could be determined in the action at law, equity should not interfere.

Staleness of demand: Limitation. Admitting the allegations of the bill, the defendant could not claim the benefit of the equitable principle which protects a party against stale demands. It is not a shield for fraud or concealment. The facts fail to disclose a bar by limitation, as no suit could have been brought against appellant, until his accounts were settled and a balance found due by him. *Davis*

*v. Tarwater, 15 Ark., 296; Pomeroy's Eq., secs. 418, 419 and 1080.*

We think the judgment was right, and it is affirmed.