[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff has applied for a prejudgment remedy consisting of replevin of various items of personal property. Based on the evidence presented at the hearing on such application, the court finds probable cause that judgment will be rendered in favor of the plaintiff.
The court further finds, by that standard, that the defendants Leonard J. Czaplicki, Jean U. Czaplicki, and Philip A. Czaplicki, individually (collectively), the "Defendants") and d/b/a Progressive Machine products the Company") are in default of their obligations to the Plaintiff with respect to the following:
 (1) a note in the principal amount of $200,000.00, dated May 31, 1989 (the "Revolving Loan Note");
 (2) a note in the principal amount of $290,000.00, dated May 31, 1989 (the "Term Loan Note");
 (3) a commercial loan note in the principal amount of $500,000.00, dated April 24, 1987 (the "1987 Note"); and
 (4) a commercial revolving and permanent loan and security agreement dated May 31, 1989 (the "Security Agreement").
The Revolving Loan Note is a demand obligation as set forth on the face of the document in bold print, and reaffirmed by the following:
 (a) Mortgage and Note Modification Agreement, dated June 1, 1990 (the "First Modification"); and CT Page 9197
 (b) Mortgage and Note Modification Agreement, dated October 1, 1990 (the "Second Modification").
The Defendants' failure to pay the Revolving Loan Note upon d constitutes a default under 6.1 of the Security Agreement.
The nature of a demand obligation is well-recognized under Connecticut law. Connecticut General Statutes 42a-3-122 (1) states: "A cause of action against a maker or an acceptor accrues . . . (b) in the case of a demand instrument upon its date, or, if no date is stated, on the date of issue." See Thomaston Savings Bank v. Warner, 144 Conn. 97, 101 (1956).
In connection with a lender's obligation to exercise good faith in accelerating payment at will, the Code Comment to CONN. GEN. STAT. 42a-1-208 provides:
 Obviously this section has no application to demand instruments or obligations whose very nature permits call at any time with or without reason. This section applies only to an agreement or to paper which in the first instance is payable at a future date.
(emphasis supplied). See also Pavco Industries, Inc. v. First National Bank of Mobile, 534 So.2d 572, (Ala. 1988).
I. Defaults of the Defendants.
A. The Revolving Loan Note. Notwithstanding the demand nature of the Revolving Loan Note, an alternate final maturity date of June 1, 1990 was specified as well. That date was extended at the request of the Defendants as follows:
 (a) pursuant to the First Modification to an alternate final maturity date of October 10, 1991;
 (b) pursuant to the Second Modification, to an alternate final maturity date of January 10, 1991;
 (c) pursuant to an informal agreement, to an alternate final maturity date of March 1, 1991.
The Modifications specifically state:
 Without in any way affecting the demand nature of the [Revolving Loan] Note and the [Security Agreement], both of which evidence an obligation which is due and payable on demand, the alternate final maturity date of the [Revolving Loan] Note . . . and the [Security Agreement] is hereby extended to . . ., so that, if not sooner paid or CT Page 9198 demanded . . .
To the extent that there may have been a right to renew, this was superseded by the express language of the Revolving Loan Note and the Modifications. Upon failure to pay upon demand and/or after the alternate final maturity a default occurred under 6.1 of the Security Agreement.
B. Cross Defaults. As a result of default under the Revolving Loan Note, all other obligations, including the Term Loan Note and the 1987 Note, became immediately due and payable in their entirety by virtue of the "cross default" provision, contained in 6.11 of the Security Agreement.
C. Commercial Insecurity. The Plaintiff believed in good faith that the prospect of payment of the obligations was impaired, constituting a default under 6.10 of the Security Agreement, as a result of the following:
 (a) Insolvency of the Company, as shown from the financial statements prepared by the Defendants' accountants;
(b) False and unreliable personal financial statements;
 (c) A reduction in the value of the real estate which secures a certain mortgage from the Defendants to the Plaintiff from $600,000.00 to $374,000.00 (as of 9/14/90); and
(d) Substantial proprietor withdrawals.
Mr. Leonard Czaplicki's testimony that $100,000.00 of the proprietor's withdrawals were used to pay back taxes evidences another default under 4.4 and 6.2 of the Security Agreement, which requires the Defendants to pay all taxes that could become a lien or charge against the Defendants or their property.
 Under the Security Agreement and the UCC, the Plaintiff, if it believes in good faith that the prospect of any obligation or the performance of any agreement of the [Defendants] . . . is impaired, . . . the [Plaintiff] may declare the then outstanding principal balance . . . on the Note and . . . other Liabilities of the [Defendants] to the [Plaintiff] to be forthwith due and payable . . .
See United States v. Grayson, 879 F.2d 620 (9th Cir. 1989).
D. Current Ratio. Section 4.14 of the Security Agreement requires the Defendants to maintain a current ration in excess or equal to 1.25:1.00 (assets:liabilities). As shown by the financial statements, defendants failed to do so. This failure CT Page 9199 constitutes a default under 6.2 of the Security Agreement.
E. Financial Information Defaults. The Defendants violated various covenants of the Security Agreement relating to their obligation to produce financial information including:
 (a) 4.1 requiring a financial statement on a semi-annual basis prepared in conformity with generally accepted accounting principles (note the accountant's disclaimer contained in the financial statement);
 (b) 4.2 requiring aging of receivable and payables within twenty (20) days of the end of each month; and
(c) 4.13 requiring a monthly list of inventory.
Each of these constitutes a default pursuant to 6.2 of the Security Agreement.
F. Monthly Payments. Further, the defendants put themselves in default by failing to pay interest due on July 24th and August 24th on the 1987 Note, and payments due on August 1 and September 1 on the Revolving Loan Note and the Term Loan Note.
II. Replevin is an Available Remedy.
An action of replevin:
 may be maintained to recover any goods or chattels in which the plaintiff has a general or special property interest with a right to immediate possession and which are wrongfully detained from him in any manner . . .
CONN. GEN. STAT. 52-515. This Court's function is a specific one:
 The duty of the trial court at a hearing on an application for a prejudgment remedy is "limited to a determination of whether or not there is probable cause to sustain the validity of plaintiff's claim.
International Harvester Credit Corp. v. Gillis, 4 Conn. App. 510,512 (1985).
The Court has found, supra, that there is probable cause to sustain the validity of plaintiff's claim. Further, plaintiff is entitled to immediate possession under the U.C.C. and the Security Agreement. Section 7 of the Security Agreement entitled "Power to Sell or Collect Collateral" provides that "[The Plaintiff] may . . . foreclose the liens and security interests created under this Agreement or under any other agreement relating to any of the CT Page 9200 Collateral by any available judicial procedure or without judicial process. . . ." The Security Agreement further provides in 8.1 that the Plaintiff's remedies are "cumulative and may be exercised singularly or concurrently". Plaintiff is also entitled to immediate possession of the Collateral under the Uniform Commercial Code which states:
 Unless otherwise agreed, a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action.
CONN. GEN. STAT. 42-9-503.
Defendant makes several affecting equitable arguments by which the Court is not persuaded. Nor is plaintiff barred from seeking replevin by Connecticut statutory or common law, or the prior-pending action doctrine.
Brown v. Chickopee Falls Company, 16 Conn. 87 (1844) is relied upon by the defendants for the proposition that the remedy of replevin is unavailable to a claimant who holds only a lien. Brown, however, predates the current pre-judgment remedy statutes, CONN. GEN. STAT. 52-278a et seq., by over a century.
The PJR statutes do not create such a limitation and were in fact:
 enacted in response to `[t]he decisions of the United States Supreme Court in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556; Lynch v. Household Finance Corporation, 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424, rehearing denied, 406 U.S. 911, 92 S.Ct. 1611, 31 L.Ed.2d 822; and Sniadach v. Family Finance Corporation, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349. . . .' E. J. Hansen Elevator, Inc. v. Stoll, [167 Conn. 623], 624. [1975].
Rhode Island Hospital Trust National Bank v. Trust, 25 Conn. App. 28,32-33 (1991). They create a purely statutory remedy:
 A prejudgment remedy is not simply a judicial remedy that is issued prior to judgment. Prejudgment remedy is a statutorily defined term that is expressly limited to only (1) an attachment, (2) a foreign attachment, (3) a garnishment or (4) an action of replevin.
Rhode Island Hospital Trust National Bank, supra, 32-33. The ancient precedents defendants glean from Brown are not incorporated CT Page 9201 into the plain language of the modern PJR statutes. These statutes were enacted in response to recent decisional law, and Brown does not survive them. Axiomatic in Connecticut law is the principle that "the legislative intent is to be found not in what the legislature meant to say, but in the meaning of what it did say. [citations omitted]" Caulkins v. Petrillo, 200 Conn. 713, 717
(1986).
Plaintiff is not barred from seeking replevin by any need to be restored to the use of the subject property. No such need is present in current statutory or decisional law. The PJR and replevin statutes make no mention of that requirement, and "[w]here statutory language is clearly expressed, as here, courts must apply the legislative enactment according to the plain terms and `cannot read into the terms of a statute something which manifestly is not there . . . [Rosnick v. Aetna Casualty Surety Co., 172 Conn. 416, 422
(1977)]." Johnson v. Manson, 196 Conn. 309, 315 (1985) cert. denied, 474 U.S. 1063, 106 S.Ct. 813, 88 L.Ed.2d 787 (1986).
Connecticut courts permit banks and finance companies to enforce security interests in collateral. In Hartford National Bank and Trust Company v. Essex Yacht Sales, Inc., 4 Conn. App. 58
(1985), appeal dismissed, 197 Conn. 801 (1985), the court permitted the replevin of nine boats by the plaintiff bank. In Black v. Schenectady Discount Corporation, 31 Conn. Sup. 521 (1974), the plaintiff finance company was permitted to replevy an inventory of mobile homes. Neither plaintiff in those cases was in the business of selling yachts or mobile homes, but they were permitted to enforce their security interests in the replevied property. Replevin is not rendered inappropriate by either statute or case law when the party seeking it is the holder of a lien interest in the subject property.
The prior pending action doctrine, an equitable and not an absolute rule, does not apply in this case. The Connecticut Supreme Court has:
 explicated the prior pending action doctrine as follows: "`"The pendency of a prior suit of the same character, between the same parties, brought to obtain the same end or object is, at common law, good cause for abatement. It is so, because there cannot be any reason or necessity for bringing the second, and, therefore, it must be oppressive and vexatious." This is "a rule of justice and equity, generally applicable, and always, where the two suits are virtually alike, and in the same jurisdiction." Hatch v. Spofford, [22 Conn. 485, 494
(1853)]; Cahill v. Cahill, 76 Conn. 542, 547, 57 A. 284
(1904).' Dettenborn v. Hartford-National Bank Trust Co., 121 Conn. 388, 392, 185 A. 82 (1936); see Zachs v. CT Page 9202 Public Utilities Commission, 171 Conn. 387, 391-92, 370 A.2d 984 (1976). "The rule forbidding the second action is not, however, one "of unbending rigor, nor of universal application, nor a principle of absolute law. . . ." Hatch v. Spofford, [supra].' Farley-Harvey Co. v. Madden, 105 Conn. 679, 682, 136 A. 586 (1927); see Brochin v. Connecticut Importing Co., 137 Conn. 350, 352, 77 A.2d 336 (1950); Detterborn v. Hartford National Bank Trust Co., supra, 393." Henry F. Raab Connecticut, Inc. [183 Conn. 108, 112-113 (1981)].
Halpern v. Board of Education, 196 Conn. 647, 653 (1985). Replevin of collateral is the remedy sought by the plaintiffs in the instant action. That statutory remedy is a different end from that sought in the initial action which was brought for a valid and separate reason. Thus, the prior pending action doctrine does not apply.
III. Plaintiff is Entitled to Replevin.
Plaintiff must show that there is probable cause that a judgment will be rendered in its favor and that it is entitled to immediate possession of the subject property. Based on these defaults of the defendants and the contents of the Security Agreement and the provisions of the U.C.C., both of these requirements have been met. Accordingly, judgment may enter in favor of the plaintiff as to its Application for Prejudgment Remedy-Replevin.
Barry R. Schaller, J.