[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS
The facts of this case as they bear on this motion to dismiss are referred to in the decision. The facts are not disputed. This motion to dismiss is based on three grounds: (1) prior pending action doctrine, (2) waiver, and (3) estoppel. It is directed against an action made pursuant to Section 52-410 of the General Statutes which seeks an order directing the defendant to proceed with arbitration.
 I.
Prior Pending Action Doctrine
The first ground for dismissal is based on the so-called prior pending action doctrine. Stephenson discusses this doctrine in § 104 pp. 423 et seq. The most penetrating observation he makes is reflected in a case he quotes from Keogh v. VonLienen, 2 Conn. Cir. 96, 98 (1963).
 "The law is to some degree obscure and there is no clear definite, and workable rule to be applied generally."
One of the earliest formulation of the rule has been followed by later courts:
 "The pendency of a prior suit of the same character between the same parties brought to obtain the same end or object is at common law, good cause of abatement. It is so because there cannot be any reason or necessity for bringing the second, and therefore it must be oppressive and vexatious," Hatch v. Spofford, 22 Conn. 485, 494 (1853).
cf Henry F. Robb Conn., Inc. v. J.W. Fisher Co., 183 Conn. 108,112 (1981), Halpern v. Board of Education, 196 Conn. 647, 652
(1985). CT Page 7731
From the beginning, however, the operation of the rule has been relaxed in appropriate circumstances
 . . . where it appears that the first action would be ineffectual, its pendency shall not abate the second; because the latter is not in such case deemed to be vexatious.
Quinebaug Bank v. Tarbox, 20 Conn. 510, 515 (1850).
Hatch v. Spofford, supra stated what is still good law when it said that the rule is not one of "unbending rigor," it is a "rule of justice and equity." The court went on to say at pp 494-495 that:
 It is obvious then, a second suit is not, of course, to be abated and dismissed as vexatious, but all the attending circumstances are to be first carefully considered and the true question will be, what is the aim of the plaintiff? Is it fair and just, or is it oppressive? . . . if the plaintiff, by a second suit, can place his (sic) claim in a more favorable condition for obtaining redress, why should he (sic) not `be permitted to do so? . . . so where he (sic) is apprehensive that by reason of error or misapprehension, he (sic) is not in as good a condition as he (sic) could place himself (sic) in by a second suit. What reason can be assigned why he may not pursue his (sic) best remedy?
Later cases supporting this general principle are Farley-HarveyCo. v. Madden, 105 Conn. 679, 682-685 (1927), Tuition Planv. Muskus, 6 Conn. Cir. 589, 591 (1971), cf Salem Park, Inc.v. Salem, 149 Conn. 141, 144 (1961).
Groth v. Redmond, 23 Conn. Sup. 308 (1962) is an interesting case. It refers favorably to the case just quoted from indicating this doctrine must not be applied so as to deprive a plaintiff "of the use in a fair manner of any proper remedy." id. page 310. But in the case before it the court did sustain a demurrer applying the doctrine to in effect dismiss the plaintiff's second action. The basis of the court's ruling and the situation CT Page 7732 confronting it are set forth in the following quote:
 . . . the plaintiffs' position is that only because the first lawsuit may possibly fail — and they believe that it should not, in spite of certain claims which the defendants may perhaps advance — the second or instant case should not be abated. if [If] this position were to be sustained the end of such multiple litigation . . . between the parties could not be foreseen. To follow the plaintiffs' rationale would be to justify oppressiveness through vexatious and harassing litigation without visible limit, id. pp. 312-313.
The court went on to say that: "It cannot be unequivocally foretold that the first action is defective. There is no clear admission by these plaintiffs without reservation, of a defect in the first action, but instead a stated conviction to the contrary. Further, the nature of the defense to the first action, though in part alluded to by the plaintiffs, has not yet been disclosed by the defendants." Id p. 312.
Keeping in mind these general legal principles, the factual context in which the issue must be resolved will be discussed.
Levine I was filed in September of 1993. It is still pending before the court. It asserts claims for breach of contract and of fiduciary duty, fraudulent misrepresentation and fraudulent non-disclosure of material facts in connection with certain investments in Advest accounts. On November 18, 1993 the plaintiffs in Levine I filed a motion to compel arbitration and to stay proceedings in the action they had brought. Although I denied the motion I held that the filing of Levine I did not constitute a waiver of the right to arbitration nor was it inconsistent with the assertion of that right. [12 CONN. L. RPTR. No. 7, 240 (September 12, 1994).] One of the reasons for my so concluding was that the purpose in filing the suit was defensive in nature — the plaintiffs wanted to avoid statute of limitation problems. As I noted, courts have found this to be a reason not to find waiver of arbitration rights, although a suit has been filed. For reasons I will discuss more fully later in this opinion, I believe the motion to compel arbitration inLevine I was a motion to compel arbitration before the NYSE. CT Page 7733
The plaintiffs after the decision in Levine I did not file a motion to reconsider or an appeal. Levine I remains pending but the plaintiffs withdrew their application for arbitration with the NYSE without prejudice.
In October 1994 the plaintiffs commenced Levine II an action claiming the right to an order under section 52-410 directing the defendant Advest to proceed with arbitration.[1] The defendant claims that the prior pending action doctrine should apply andLevine II should be dismissed.
What then are the mechanics of determining whether two lawsuits are so virtually alike that the second lawsuit is dismissed on the basis of the prior pending action doctrine?
The courts have said you have to examine the pleadings to see if they are virtually alike, Halpern v. Board of Education, 196 Conn. at page 653, Northern Homes Distributors v. Grosch,22 Conn. App. 93, 96 (1990).
On their face the two pleadings are not alike. Levine II sets forth a variety of common law causes of action which allege violation of the civil law by Advest and seeks monetary and punitive damages, interest and attorney's fees. Levine II likeLevine I refers to the fact that the plaintiffs had accounts in advest but Levine II does not explicitly refer to any alleged wrongful acts of the defendant or assert any theory of liability but merely alludes to the fact that the parties agreed that any disputes or controversies should be settled by arbitration. The complaint further alleges that the defendant has refused to arbitrate and seeks an order that Advest submit to arbitration pursuant to § 52-410 of the General Statutes.
In a factual and historical sense, the underlying basis for both suits are activities by the defendant which the plaintiffs claim wrongfully caused them loss. It is also true that Levine I
seeks recovery for that loss and Levine II has a similar end in that it requests the court refer the dispute to arbitration where the same claims as are made in Levine I will be addressed.
All of this hardly provides a reason to permit the court to regard Levine I as a prior pending action thus permitting the dismissal of Levine II. To do so would in effect ignore the value and preference state and federal policy gives to the arbitration process. To say the ultimate objective of Levine I and Levine II
CT Page 7734 is resolution of the claims made by the plaintiffs does not put them on an even footing. One action in the complaint seeks court resolution, the other seeks resolution by means of arbitration. Therefore, it could be said that the relief sought in the face of the complaint in Levine II seeks a different remedy or way of enforcing the rights claimed to have been infringed. If that characterization is valid then case law says the prior pending action doctrine does not apply. cf Hatch v. Spofford supra and other cases cited.
But beyond that it could be said that one other reason not to apply the doctrine is not even so much the recognition of the right of the plaintiffs to pursue an effective remedy or more desirable method of enforcing their right but a preference for arbitration as such. That is, the system as such has a preference for arbitration and where application of the doctrine effectively forecloses its use then the doctrine should not be applied to abate an action that in effect seeks arbitration.
The defendant has an answer to that. In effect it argues that the application of the prior pending action doctrine requires that the comparison of pleadings test set forth in Halpern v.Board of Education supra should be given a broad view. Thus inLevine I fairly immediately after the filing of the suit a motion to compel arbitration was filed. This matter was extensively briefed, arguments were had and much time and effort was expended by the defendant to resist the motion. I suppose it could even be said Levine I was only filed for defensive reasons involving the statute of limitations; the real motive even behind Levine I was to provide a platform from which to file the motion to compel — arbitration is what the plaintiffs were interested in all along.
That is a persuasive argument and no cases I could find have dealt with the exact same problem. Groth v. Redmond supra comes closest to dealing with the question presented. The old cases are the best guide since they set forth the basic reason for the doctrine in the first place and the considerations which should guide courts in relaxing a too rigorous application of it.
The problem here is that unlike the situation in Groth it can be "unequivocally" said that Levine I will not provide a vehicle for the plaintiffs to secure arbitration. They lost the motion to compel. Furthermore both sides agree that because of procedural or technical error in the way suit was brought an appeal will not be from the court's adverse ruling on the motion to compel. In CT Page 7735 this context the filing of Levine II is not filed to harass or annoy but is an attempt to secure that arbitration which Levine I
cannot provide a vehicle to secure. Certainly this second litigation is burdensome to the defendant but I cannot say that the plaintiff's motive in bringing the second action is to cause vexation as opposed to securing arbitration. Rightly or wrongly, I decided the plaintiffs' motion to compel arbitration before the NYSE (of which more later) was barred, that decision could not be appealed. The prior pending action is after all based on notions of equity and the cases indicate where error or mistake is made which precludes effective relief by the prior pending action the second action need not be abated. It is a separate question whether the prejudice and expense caused to a defendant by having to litigate the first action should provide a reason to abate the second action on a waiver or estoppel theory. But I think it is improper to import such notions into the application of the prior pending action doctrine — application of that doctrine should depend on the plaintiff's motives in bringing the second action and whether the relief requested in the prior action can be said to be fully effective.
2.
Waiver of Right to Arbitration
The defendant Advest also seeks to have this matter dismissed on the grounds of waiver. The defendant basically argues that under the terms of the arbitration agreement the plaintiffs could have chosen one of several forums to arbitrate their claim. They voluntarily chose the NYSE and lost a motion to compel arbitration before the NYSE. The defendant claims that by so selecting the NYSE they have waived their right to seek arbitration before the AAA.
Before discussing the merits of this argument one matter should be discussed which is relevant to the waiver discussion and perhaps to any appellate review of my decision.
The plaintiffs in their briefs and arguments on the motion to dismiss in this case take the position that the motion to compel in Levine I was not confined to a request to compel arbitration before the NYSE. Rather the plaintiffs claim the court was also asked to refer the matter to the AAA.
If this is a fair characterization of what was before the CT Page 7736 court on the motion to compel in Levine I it would be difficult to find that the plaintiffs have somehow waived their right to seek arbitration before the AAA.
The plaintiffs note that the face of the motion to compel inLevine I did not confine its request for arbitration to arbitration before the NYSE. Under the terms of the arbitration agreement the parties could have selected arbitration before several different forums one of which was the AAA which does not have a six year eligibility rule regarding the filing of claims. As noted the plaintiff had filed a claim for arbitration before the NYSE which does have such an eligibility requirement. But they argue that pursuant to the motion to compel filed in LevineI the court could have referred the mater to arbitration before the AAA and that would have been consistent with the relief demanded in the motion.
The plaintiffs base this position on the fact as previously noted that the actual motion to compel does not specifically request that arbitration be before the NYSe but in the body of the motion dated November 18, 1993 requests the court to "stay the court proceedings pending arbitration and compel the parties to submit their disputes to arbitration . . ." For future reference, however, it should be noted that that sentence concludes with language to the effect that the plaintiffs' request "is more fully set forth in the attached memorandum of law and exhibits."
The plaintiffs also refer to a portion of a brief filed by them on December 20, 1993. There the plaintiffs discussed whether the mere filing of Levine I in court would constitute a waiver of their right to move to compel arbitration; they said no and I agreed with them. But in support of this argument the following was said in the brief at page 18.
 "Generally the plaintiffs' actions (in filing Levine I and claim for arbitration with NYSE) must be viewed in light of their facing potential time limitation defense claims, such as those raised by the defendant, and some conflict of authority as to what forum they should present their claims. For example, if this court were to take it upon itself to decide that this action should not be before the NYSE because of the NYSE's six year limitation rule, this court could CT Page 7737 refer this matter instead to AAA, which has no such rule. By filing suit in a timely fashion (i.e. Levine I) together with a claim for arbitration, the plaintiffs stand to avoid statute of limitation defenses that otherwise could be asserted by the defendant before an AAA arbitration panel, if the court were to refer the case specifically to AAA."
This sums up the only grounds that the court is aware of upon which the plaintiffs' rely to argue that a referral by the court to AAA for arbitration was an option actually presented to the court by the motion to compel in Levine I.
However, this language does not belie the reality to the court at least that what the court was in fact being asked to do throughout the proceedings on the Levine I motion to compel was to compel arbitration before the NYSE. Briefs were filed by the plaintiffs and numerous letters sent to the court containing references to dozens of cases from the Second Circuit and severally other Federal Circuits including New York cases to argue the point, which they ably did, that the six year eligibility rule of the NYSE did not prevent referral of the matter by the court to the NYSE or better put that the eligibility question should be decided by the arbitrators.
Apart from what can be deduced from the above quoted language in the plaintiffs' brief of December 20, 1993 the court was never explicitly asked nor was the suggestion made that it could somehow refer this matter to AAA. In fact the plaintiffs had powerful motives for seeking a referral to the NYSE. In footnote 4 on page 18 of the December 20th brief the plaintiffs said:
 4. It should be noted that while the plaintiffs could have filed a claim originally with AAA, instead of with the NYSE, AAA's arbitration fees are scaled to the size of the claim, and because the plaintiff's direct principal losses alone exceed $30,000,000. the AAA fees would very significantly increase the parties' costs of resolving this case and thereby defeat one of the primary goals of arbitration — the reduction of costs.
This footnote was appended to the very language in the brief that the plaintiffs now rely on to suggest an referral was an option before the court. When the footnote is read with this CT Page 7738 language, I do not believe it can be seriously contested that any party before the court had an understanding that the court was being asked to refer the matter to AAA if it held against the plaintiffs on the motion to compel NYSE arbitration. Why wasn't a motion to reconsider filed with loud protestations to the effect that the court misunderstood the relief being requested and did not rule on something that all sides knew was before the court — i.e. a request for an referral? Or to put it another way, why labor for weeks over the question as to whether procedurally there was a right to appeal from the court's ruling in Levine I
and then through the trouble and expense of filing Levine II if the position now adopted by the plaintiffs was one held throughout the Levine I proceedings — why not file a motion to reconsider? Furthermore, I believe it would not have been fair for the court, once having decided against the NYSE referral, to sua sponte refer the matter to AAA. At that juncture Advest counsel would have had the right to raise the same waiver and estoppel arguments now being made. Can the plaintiffs seriously suggest that in its opinion in Levine I the court could have simply referred the matter to the AAA without scheduling further hearings? I think not. The plaintiffs certainly did not ask for any such hearing.
In any event what persuades the court that what was before the court was a motion to compel NYSE arbitration is explicit language of the briefs filed by the plaintiffs.
In the initial motion to compel filed November 18, 1993 by the plaintiffs it is certainly true that the plaintiffs made a broad request for arbitration without mentioning the NYSE but the last sentence of the motion as noted says that the plaintiffs are making of their request "as is more fully set forth in the attached memorandum of law and exhibits." Page 4 of that brief states:
 "On September 21, 1993, plaintiff initiated an arbitration proceeding before the New York Stock Exchange raising the same claims pertaining to their accounts with Advest that are presented in this proceeding. Plaintiffs have requested Advest to stipulate to a stay of proceedings in this case in order to permit arbitration of these claims, as contemplated by the written arbitration agreements. Advest, through its counsel, has refused this request." CT Page 7739
It was in this context that the legal argument for compelling arbitration proceeded — i.e. in the context of an order to compel arbitration before the NYSE, a forum the plaintiffs had chosen.
In fact in the very December 20th brief they now rely on the second sentence on page one reads:
 "Contrary to the assertions made by the defendant in objections to plaintiffs' motion (to compel arbitration) plaintiffs claims are eligible for arbitration and this court should leave to the arbitrators the issue of whether any asserted claim in (sic) untimely. Nor is there any merit to the defendant's assertion that plaintiffs waived the right to arbitrate by the simple act of filing this (lawsuit)" (emphasis added).
The question of timeliness presented itself in the context of the NYSE arbitration request, that was the arbitration the plaintiffs requested the court to compel; all sides knew the AAA had no six year eligibility requirement. The question of timeliness came up only because a request for NYSE arbitration was made by the plaintiffs.
Finally in a brief filed December 23, 1993 only three days after their December 20th brief it is made even plainer that as regards the motion to compel the only matter before the court as regards arbitration was the request to compel arbitration before the NYSE. In heading number 4 the brief says at page four:
 4. Given that this court must follow the Second Circuit in applying the FAA (Federal Arbitration Act), what position does the second circuit take concerning the NYSE and NASD six year requirements.
Then the brief before dealing with the case law says: "the Second Circuit does take a clear position as to the time eligibility requirements that parties may place in their agreements to arbitrate and that position is that questions concerning compliance with such requirements shall be referred to the arbitrators." (p. 4)
That was the framework in which the plaintiffs presented their argument. There is not a hint that the plaintiffs were suggesting the possibility of an AAA referral by the court except CT Page 7740 for one sentence in one of the many briefs and communications made to the court in the context of a waiver argument.
The fact that the court concludes that the plaintiffs by their motion to compel in Levine I sought to compel arbitration before the NYSE does not mean that the defendant should prevail on the waiver issue, it merely means the plaintiffs cannot use their purported request for arbitration in that motion as a basis to oppose the waiver argument. In fairness to Advest, I felt it necessary to set forth my position on this matter in case my present ruling is subject to appeal. I will now discuss the merits of the waiver issue.
What is meant by waiver in the context of arbitration agreements? It has been said that "an arbitration clause may be waived by the parties or by one entitled to its benefit,"Waterbury Teachers Ass'n. v. Waterbury, 164 Conn. 426, 435
(1973). The question of waiver in these cases is no different from questions of waiver presented in other areas of the law. A court has to decide if a party by its actions "intentionally" gave up a known right, Zurich Insurance Co. v. Evans, 391 N.Y.S.2d 564, 566 (1977).
It has been said that whether there has been waiver in the context of an arbitration agreement should be analyzed the same way as in any other contractual context.
"The essential question is whether, under the totality of circumstances, the . . . party claiming arbitration has acted inconsistently with the arbitration right," National Foundationfor Cancer Research v. A. G. Edwards Sons, Inc., 821 F.2d 772,774 (D.C. Cir. 1987). To find waiver as the court in Zurich Ins.Co. said the party must abandon its right knowing of its existence and in fact intending to abandon that right, id. p. 566. It has also been said under federal law that "if there is any ambiguity as to the scope of the waiver (a court) would be obliged to resolve the issue in favor of arbitration, NationalFoundation, 821 F.2d at page 774, Moses H. Cone Memorial Hospitalv. Mercury Construction Corp. , 460 U.S. 1, 24-25 (1983).
Most of the cases involving waiver of arbitration have involved the issue of whether and when the initiation or participation in litigation can be construed as a waiver to the right of arbitration. Perhaps confusingly some state and federal cases introduce an added necessary element to a finding of waiver CT Page 7741 in these types of cases. It has been said that "a party is not deemed to have waived its right to arbitration by filing a court action unless the other party has been prejudiced in the interim," Hibbard Brown Co. v. ABC Family Trust, et al,772 F. Sup. 894, 896 (D Md. 1991). Even under these cases, however, prejudice alone is not enough to find waiver. Thus the Utah Supreme Court has said: "We therefore adopt the principle that waiver of a right of arbitration must be based on both a finding of participation in litigation to a point inconsistent with the intent to arbitrate and a finding of prejudice. . . . both prongs of this test turn on the facts of the individual case," Chandlerv. Blue Cross Blue Shield, 833 P.2d 356, 360 (Utah 1992). The interjection of a prejudice analysis into a waiver question is confusing but is perhaps based on a contract law analysis; theChandler court said it was setting up the two prong rule because "it is not the policy of this court to allow a party to suffer prejudice because an opposing party has failed to timely assert a contract right," id. p. 360.
Initiation or participation in litigation are not the only grounds upon which a finding of waiver can be made. Any conduct showing a party did not regard the arbitration agreement in effect or that it did not intend to avail itself of such a provision can constitute wavier. cf. Batter Building MaterialsCo. v. Kirschner, 142 Conn. 1, 11 (1954), Independent SchoolDistrict v. A. Hedenberg Co., 7 N.W.2d 711, 717 (Minn. 1943).
Turning to the facts of this case, it should first be said that although the cases on waiver in this area are almost suitable for framing in the concise way they set forth their black letter law the application of the waiver analysis does not necessary supply an easy answer. That is so because what we are talking about is the waiver of a right that is defined and limited by the contractual context in which it was created.
From one perspective it seems that the plaintiffs here through their actions and failures to act never intentionally meant to give up or gave up or abandoned or meant to abandon their right to seek arbitration of this matter. They filed LevineI almost on the same date they requested arbitration before the NYSE. Within six weeks of filing the court action they filed a motion to stay the action and a motion to compel arbitration. In support of that motion numerous briefs and letters were submitted to the court, oral argument was had and counsel for the plaintiffs diligently pressed his motion to compel arbitration. CT Page 7742 The motion was lost. It is true the plaintiffs did not file a motion for reconsideration but where would that have led them. If they lost the motion to reconsider or the court did not entertain it, the plaintiffs could not have appealed because Levine I was not a properly brought § 52-410 CGSA action. The presentLevine II action is a procedurally proper action under the statute.
Levine II was brought just two months after my ruling on the motion to compel in Levine I, apparently after counsel explored the possibility of appealing my ruling. Indeed in a letter submitted to the court by plaintiffs' counsel on April 16, 1995 indicates that he entertains some hope of relitigating in LevineII the issues decided by me in Levine I as to the propriety of an order compelling NYSE arbitration. Barely three weeks after my decision in Levine I the plaintiffs through counsel requested the defendant submit to AAA arbitration. A request ordering such arbitration will also be pressed in Levine II. Hopefully all of these demands will be presented in some order of priority since a court cannot compel arbitration before two panels.
Admittedly there was some confusion in the way the claim for arbitration was presented. Levine I was not a procedurally correct vehicle to enforce the plaintiffs claim for arbitration and appeal any adverse ruling on the claim.
But based on these historical facts, I cannot conclude the plaintiffs made an intelligent and knowing waiver of their right to arbitrate or acted in such a way that was inconsistent with a desire to arbitrate or with an intent to submit to arbitration.
Surely the activities of the plaintiffs in asserting their rights caused prejudice to the defendant. Their initial failure to file a proper § 52-410 action caused the defendant and the court to expend much time and effort. Levine II is an attempt to negate the court's ruling in Levine I, an attempt that would not have been necessary if an appropriate § 52-410 action had been filed initially.
But prejudice alone is not enough basis under the cases to find waiver, there must be an intelligent and intentional waiver of a known right and as I said earlier, I cannot find that here. From the inception of the legal steps taken by the plaintiffs, it is evident they wanted arbitration as such. CT Page 7743
But the waiver issue can be approached from another perspective. The defendant seeks to couch its waiver argument in the setting of the contractual agreement to arbitrate between the parties. Thus the plaintiffs initially sought arbitration before the NYSE — they filed a request for arbitration with that forum on September 21, 1993 and as indicated, I interpret the motion to compel filed on November 18, 1993 in Levine I as a demand for court ordered arbitration before the NYSE.
The defendant points to these circumstances — choice of NYSE arbitration — to raise a variation on the waiver theme related to the waiver issue but embedded in the contractual context of this agreement to arbitrate. In this regard it must be said that the defendant makes legal observations that really cannot be quarrelled with.
An arbitration agreement is a contract, Volt InformationSciences, Inc. v. Bd. of Trustees, 489 U.S. 468, 479 (1989). Also it is true that "when the provisions of a contract are clear and unambiguous, the interpretation thereof is a question of law and effect must be given to the parties' expressed intent," ArcyPaint Co., Inc. v. Resnick, 521 N.Y.S.2d 25, 236 (1987), Tomlinsonv. Board of Education, 226 Conn. 704, 722 (1993).
The defendant then points to the following language of the arbitration agreements in this case:
 "The undersigned agrees, and by carrying an account for the undersigned you agree, that . . . all controversies which may arise between us . . . shall be determined by arbitration in accordance with the rules then prevailing of the arbitration committee of the National Association of Securities Dealers, Inc., The American Arbitration Association, The Board of Arbitration of the new York Stock Exchange, or the Board of Arbitration of the American Stock Exchange as I may elect."
The defendant then argues that the use of the word or in referring to the different arbitration forums means that a party could elect one but not more than one. Here, the plaintiffs elected the NYSE, they pursued this claim by trying to procure a motion to compel in court. The motion was lost on a finding that the claim to the NYSE was untimely and now the defendant argues the plaintiffs cannot try to compel arbitration before another CT Page 7744 forum — they have waived their right to do so.
The plaintiffs may not have intended to waive their right to arbitration before the AAA. Reference has been made to their speculation in the December 20, 1993 brief and to the fact that within three weeks of the court's decision on the motion to compel in Levine I plaintiffs through counsel informed the defendant of a request to submit to arbitration before the AAA.
But the defendant's argument focuses on the actual language of the arbitration agreement which, according to the defendant, indicates by its plain terms that once a party chooses arbitration before a particular arbitration forum the party is bound by that choice. If at a later point, after challenge, it is shown that the forum chosen has eligibility rules barring its hearing of the dispute, then the party has waived its right to arbitration before another forum which if chosen might not have presented the same bar. Certainly this type of agreement could have been entered into between the parties and waiver must be determined within the context of the contract. Volt InformationScience, Inc. v. Bd. of Trustees, supra, Chandler v. Blue CrossBlue Shield, supra.
But state and federal policy favoring arbitration are quite similar and clear. In Moses H. Cone Hospital v. MercuryConstruction Corp. , supra, referring to the arbitration act, the court said "as a matter of federal law any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability." 460 U.S. at pp 24-25. The same rule would apply to the interpretation of contract language which a party argues supports a claim that there has been a waiver of arbitration rights. Keeping these principles in mind, I can appreciate an argument under this contract language which precludes a party from choosing more than one of the arbitration forums to present its dispute, I can understand a position that would hold that once a party has chosen a particular forum and especially once any substantial proceedings have begun before that forum that party is precluded from trying to bring the matter before another arbitration forum. Such results are necessary to protect the integrity of the arbitration process.
However, I have more difficulty in finding that when a party in apparent good faith chooses a particular forum they are CT Page 7745 precluded by this contract language from selecting another arbitration forum when their first choice is barred because of a time bar to eligibility for arbitration. It was a very close and extremely difficult issue which I addressed in Levine I — whether when a claim such as that raised by the defendant to NYSE arbitration is presented, a court should decide it or the decision should be left to the arbitrators as a procedural question.
People agree to arbitration to avoid the delay and expense of court proceedings. But they also have an interest expressed in their agreement to arbitrate that the process by which arbitrators are chosen is honored. When Advest entered into this agreement one of its expectations was that it would not have to arbitrate before the NYSE or any other arbitration forum if the six year eligibility rule for presenting claims to such a forum were not complied with. I held that this was a substantive question which should be decided preliminarily by the court; the class of cases in which a court should intervene in such a manner in the arbitration process is very narrow, cf. HartfordSteamboiler Inspection and Insurance Co. v. Industrial RiskInsurers, 12 Conn. L.Rptr. 464, 467-468 (1994).
Once courts start intervening in this manner both sides will have a motive to test by way of declaratory judgment, motions to compel, resistance thereto and to § 52-410 actions the initial choice of arbitration forum given contract language such as appears in this agreement. Reliance on the courts to resolve such matters, preliminary to actual arbitration and before it substantively begins, should not carry the consequence of barring a choice of another arbitration forum provided for in the contract and otherwise possibly suitable for arbitration. I had no intention of going that far in Levine I or in a case likeHartford Steamboiler v. Industrial Risk Insurer, supra.
Nothing in this contract language forces this result and indeed the contracts before the court involve interstate commerce so they fall within the ambit of the Federal Arbitration Act 9 U.S.C.A. §§ 1-16 (West 1970 and Supp. 1993). the so-called "positive assurance" test mandates that doubts in the interpretation of contractual language should be resolved in favor of "coverage", that is arbitration, United StatesSteelworkers of America v. Warrior Gulf Navigation Co.,303 U.S. 574, 582 (1960), Board of Education v. Frey, 174 Conn. 578, 582
(1978). As said in Mitsubishi Motors Corp. v. SolerCT Page 7746Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985) "in construing an arbitration agreement within the coverage of the FAA, as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." This is a fancy way of saying that after Volt
there may not be a feral common law of arbitration but there are certainly federal rules of contract interpretation that favor arbitration. In any event I cannot find waiver here by the plaintiffs of their right to arbitration.
The previous observations I believe dispose of the estoppel argument raised by the defendant. Under our law equitable estoppel is predicated on proof of two elements:
(1) The party against whom estopped is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief and
(2) the other party must change its position in reliance on those facts.
O'Sullivan v. Bergenty, 213 Conn. 641, 648 (1990).
I share some of the frustration of defense counsel in this case since I after all wrote the too lengthy opinion in Levine I
but given my prior reasoning that in effect concluded that the initial choice of the NYSE did not under the facts of this case preclude, an attempt to arbitrate before another contractually designated forum I cannot say the first prong of the equitable estoppel doctrine is met. That is, the fact that the plaintiffs initially chose the NYSE should not be held to preclude under the facts of this case choice of another forum if because of objection raised by the defendant the court held NYSE arbitration was barred. At least under my holding the defendant had no right to expect then that successful resistance to NYSE arbitration would preclude arbitration as such since it cannot be said as a matter of law or fact that the plaintiffs in making the initial forum choice intended that result or should be held to have intended that result.
In conclusion let me say that I could find no cases directly on point. (see, however, Finsilver, Still Moss v. Goldberg,Mass. Co., 171 N.E. 579, 582 (NY, 1930) Cardozo, J. which in an admittedly indirect and convoluted way can be taken as some CT Page 7747 support of the court's position (see headnotes 3 and 4). I agree with the defendant that Kidder Peabody Co. v. Zinsmeyer TrustsPartnership 41 F.3d 861 (CA 2, 1994) and Prudential SecuritiesInc., et al v. Ahern, et al, (N.Y. Supreme Court, 7/12/93) are not strictly on point. I disagree with the defendant's suggestion of a specter that denial of the motion to dismiss will present the possibility of repeated and seriatim attempts to secure arbitration before different available arbitration forums. That possibility only arises in the limited context of a ruling like that made by me in Levine I where it was decided that in a narrow class of cases a court must determine if there is a bar to eligibility. Hopefully this case will be sui generis as to its facts if not as to the general principles it raises.
Finally, let me repeat what I indicated earlier. This decision does not mean to imply that in Levine II the plaintiffs should have a right to request arbitration before the NYSE. Within the context of the agreement and in light of the facts they very well may be precluded from requesting that relief but that particular issue is not before me so I cannot decide it.
Fairness also requires me to observe that I cannot say but it maybe true that the defendant has a right to immediate appellate relief in light of this decision given my ruling in Levine I
which the defendant may argue gave it certain rights the vindication of which may be lost if arbitration before the AAA were to be ordered in Levine II, cf. Cohen v. BeneficialIndustrial Loan Corp. , 337 U.S. 541, 546 (1949) in its implications if not in its holding.
In any event the motion to dismiss is denied.
Corradino, J.